UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA CRANMER,

                                                                                            <u>DECISION AND ORDER</u>

                              Plaintiff,

                                                                                           19-CV-6512L

            v.

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On February 21, 2012, plaintiff, then thirty-seven years old, filed an application for supplemental security income benefits, alleging an inability to work since August 1, 2009. (Administrative Transcript, Dkt. #7-2 at 90). Her application was initially denied, and following a video hearing before Administrative Law Judge ("ALJ") Jennifer Gale Smith, the ALJ issued an unfavorable decision on July 19, 2013. (Dkt. #7-2 at 87-106). The Appeals Council denied review, and plaintiff appealed.

The matter was remanded by decision and order of Magistrate Judge Marian W. Payson on February 7, 2017, for further proceedings. Specifically, the Commissioner was directed to reassess the opinion of plaintiff's treating psychiatrist, in light of the ALJ's factual mischaracterization of plaintiff's treatment records as showing sustained improvement in her mental health symptoms with treatment, when the records actually showed waxing and waning of symptoms. (Dkt. #7-9 at

794-835). The Appeals Council accordingly referred the matter back to the ALJ for reconsideration. (Dkt. #7-9 at 840-42).

The ALJ held a supplemental hearing by videoconference on July 24, 2018, at which plaintiff and vocational expert Lavonne Brent testified. On August 23, 2018, the ALJ issued a second unfavorable decision. (Dkt. #7-8 at 663-86). That decision became the final order of the Commissioner when the Appeals Council denied review on May 7, 2019. (Dkt. #7-8 at 657-62). Plaintiff again appeals.

The plaintiff has moved for remand of the matter for the calculation and payment of benefits, or in the alternative for further proceedings (Dkt. #9), and the Commissioner has cross moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). (Dkt. #14). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, primarily comprised of treatment records for obesity, fibromyalgia, bronchial asthma with chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, status-post right knee arthoscopy, osteoarthritis of the knees, metatarsal fracture of the left foot, anxiety, post-traumatic

stress disorder ("PTSD") and depression, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #7-8 at 669).

Initially, the ALJ applied the special technique to plaintiff's mental impairments, and found that she has moderate limitations in understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence and pace; and moderate limitations in adapting and managing herself. (Dkt. #7-8 at 670-72).

After summarizing plaintiff's medical records, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: can never climb ladders, ropes or scaffolds or walk on uneven terrain; can never balance, kneel, crouch or crawl; can occasionally climb ramps or stairs, or stoop; can frequently reach, handle, finger and feel; and can occasionally push and pull up to the weight required for sedentary work. Plaintiff requires the ability to change positions every half hour, but can stay on task at her workstation during the position change. She should have no more than occasional exposure to respiratory irritants such as dust, odors, fumes and gases, and extreme hot and cold temperatures. She is limited to noise environments of moderate or below. Plaintiff can work at simple, routine and repetitive tasks in a low stress job, defined as requiring no more than occasional decision-making, judgment and/or changes in the work setting. She should work at goal-oriented work rather than production pace rate work. Finally, plaintiff can have no more than occasional contact with coworkers, supervisors and the public. (Dkt. #7-8 at 672-73).

Because plaintiff's RFC does not permit her return to her past relevant work as a cashier (performed at the light exertional level), the ALJ solicited testimony by the vocational expert to determine whether there were positions in the economy that plaintiff could perform. When given the ALJ's RFC finding as a hypothetical question, the vocational expert testified that such an

individual could perform the representative sedentary unskilled positions of stuffer, paster and sorter. (Dkt. #7-8 at 685-86).

### I.     Opinions By Treating Sources

Initially, plaintiff argues that the ALJ erred when she declined to grant controlling weight to the opinions of plaintiff's treating psychiatrist, Dr. John Deines, and treating therapist, licensed clinical social worker Barbara Stager. (Dkt. #7-7 at 305-306; Dkt. #7-13 at 1062-67).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported . . . and is not inconsistent with the other substantial evidence in the case record.'" *Gough v. Saul*, 2020 U.S. App. LEXIS 949 at *2-*3 (2d Cir. 2020) (unpublished opinion) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). It is well settled that the conflicting opinions of other medical experts, including consulting physicians, "may constitute such [substantial] evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In determining whether to accord controlling weight to the opinion of a treating physician, factors to be considered by the ALJ include: (1) the nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c).

Dr. Deines completed a mental RFC assessment for the period from December 22, 2011 through February 16, 2012, opining that due to depressive disorder and PTSD, plaintiff had moderate limitations in understanding and carrying out instructions, maintaining concentration, making simple decisions, interacting with others, and behaving in a socially appropriate manner. Dr. Deines indicated that plaintiff would be "very limited" with respect to functioning in a work setting at a consistent pace. (Dkt. #7-7 at 305-306).

On June 19, 2014 (after the ALJ's initial, unfavorable decision, and while plaintiff's appeal of that decision was pending), Dr. Deines cosigned a second mental RFC assessment, completed by Ms. Stager, which indicated that treatment for plaintiff's PTSD and depression had resulted in an "[o]verall red[uction] of m[ental] h[ealth] symptoms." Dr. Deines indicated that plaintiff's mental health symptoms correlate strongly to her physical health: they "increase when [her] physical pain increases," and he described her mental status as "normal," with a "good" prognosis. Nonetheless, Dr. Deines indicated that plaintiff was "limited but satisfactory" in the areas of remembering work-like procedures, understanding and remembering simple directions, and working with others. She was "seriously limited" in the areas of completing a normal workday, performing at a consistent pace without an unreasonable number and length of rest periods, understanding and carrying out detailed instructions, dealing with the stresses of semi-skilled or skilled work, and traveling in unfamiliar places or using public transportation, and would be expected to miss more than four days of work per month. (Dkt. #7-13 at 1062-67).

The ALJ acknowledged Dr. Deines's status as a treating psychiatrist, and considered plaintiff's treatment history with Dr. Deines and Ms. Stager, which commenced in or around 2010 and continued throughout the relevant period, albeit with at least one gap of approximately six months when plaintiff discontinued mental health treatment. According to plaintiff's treatment plans, she was expected to meet once or twice a month with Ms. Stager for 45 minutes, and once every 1-3 months with Dr. Deines for 15 minutes, or more frequently as needed. (Dkt. #7-7 at 523, 526, 613; Dkt. #7-13 at 1083, 1117).

The ALJ declined to grant Dr. Deines's opinions controlling weight to the extent that they described greater-than-moderate limitations in the areas of attendance, completing a workday and

5

performing at a consistent pace without an unreasonable number of interruptions,[1] finding that they overstated plaintiff's limitations and were inconsistent with the longitudinal evidence, particularly plaintiff's psychiatric progress notes, and notes from plaintiff's primary care providers, to whom plaintiff generally reported that her PTSD and depression were relatively stable, and who generally noted that plaintiff presented as alert, with normal mood and affect. (Dkt. #7-7 at 429, 431, 439, 463, 466, 474, 480; Dkt. #7-8 at 683).

The ALJ further noted that the level of limitation described by Dr. Deines was inconsistent with plaintiff's self-reported daily activities, which included meeting friends through social websites, hosting Tupperware parties, going camping on at least one occasion, and engaging in social gatherings. Finally, the ALJ observed that Dr. Deines's and Ms. Stager's opinions were contradicted by those of three other sources whose opinions the ALJ had given "great" weight based on their consistency with the record: consulting psychologist Dr. Sara Long, who examined plaintiff and opined that she had no work-related psychiatric limitations, and State Analysts Dr. T. Inman-Dundon and Dr. Sharon R. Kahn, who reviewed the record and determined that plaintiff had no more than moderate mental limitations in any area of functioning. (Dkt. #7-7 at 410-13, 414- 18, 419-21; Dkt. #7-13 at 1689-97).

The ALJ's characterization of the record was not factually erroneous. Indeed, although plaintiff's psychiatric progress notes reflect that plaintiff's depression and anxiety fluctuated, typically situationally (that is, in relationship to stressful events in her personal life), and that she often reported feeling sad, anxious, fearful, and/or paranoid, she also felt that "her psychiatric medications work adequately for her," and her treatment records do not appear to describe

---

[1] While the ALJ did not specify those portions of Dr. Deines' opinions that she opted to credit, her RFC finding – which includes limitations to simple and routine (unskilled) low-stress work with no production pace requirements – implicitly suggests that she concurred with Dr. Deines that plaintiff had "serious" limitations with respect to understanding and carrying out detailed instructions, and coping with the stresses of semi-skilled or skilled jobs.

disabling limitations resulting from her symptoms. At most, plaintiff's progress notes establish that she had ongoing difficulty sleeping due to nightmares, that she often experienced anxiety and fear when out in public, particularly in loud or crowded areas or around large groups of men, and that between November 2012 and April 2013 and on other isolated occasions when she encountered a former abusive partner, plaintiff experienced "flashbacks" and/or panic attacks. In response to these complaints, her mental health care providers prescribed a host of medications, and encouraged plaintiff to leave the house and socialize more often. Plaintiff's records also make reference to episodes where plaintiff's cognitive processing appeared to be delayed, which was variously attributed to over-medication with sedatives and fibromyalgia-related "brain fog." (Dkt. #7-7 at 516, 525, 531, 533, 537, 539, 541, 543, 545, 547, 628, 638, 642; Dkt. #7-13 at 1068, 1080, 1082, 1087, 1098, 1100, 1101, 1104, 1107, 1113, 1115, 1116, 1119, 1126, 1233, 1484, 1487, 1549).

Mental status reports were completed by Ms. Stager on May 31, 2013 and April 16, 2014. In both reports, Ms. Stager found that plaintiff was well-oriented and alert, with appropriate affect, good grooming, logical and coherent speech, intact recent and remote memory, a cooperative attitude, good insight, good judgment, the ability to attend and concentrate, and good impulse control. (Dkt. #7-7 at 648; Dkt. #7-13 at 1120-24). Ms. Stager's progress notes in and after 2013 occasionally included an objective assessment of plaintiff's symptoms and their severity, including: anxiety (listed frequently, rated mild, moderate or "lowered"); worry (listed frequently, rated mild or moderate); crying episodes (listed once, rated moderate); and depression (listed twice, rated moderate). (Dkt. #7-13 at 1077, 1115, 1119, 1125, 1128, 1130, 1489). Ms. Stager also typically found that plaintiff was able to focus on relevant topics during therapy sessions. *See e.g.*, Dkt. #7-7 at 622, 626, 628.

Given that Dr. Deines's opinions reflected a level of limitation significantly greater than any indicated in plaintiff's psychiatric progress notes, mental status reports (the latest of which was written by Ms. Stager, just a few weeks before she wrote a significantly more limited opinion which Dr. Deines cosigned), Ms. Stager's notations concerning the severity of plaintiff's symptoms, and all other medical opinions of record, the ALJ's finding that Dr. Deines's opinions were contradicted by substantial evidence of record was not erroneous.

Dr. Deines's opinions were also, as the ALJ noted, inconsistent with plaintiff's self-reported activities of daily living. Although plaintiff alleges that the ALJ "cherry picked" the evidence by listing some activities that the plaintiff performed fleetingly or infrequently, such as camping and selling Tupperware, I do not find that the ALJ's description of plaintiff's activities mischaracterized the evidence: indeed, her description of plaintiff having the ability to "put up a tent . . . with a friend and make a campfire" on one occasion does not indicate that the ALJ erroneously believed that plaintiff's camping was a longstanding or frequent hobby. (Dkt. #7-7 at 611, 622, 628).

The plaintiff reported to multiple healthcare providers that she could care for herself, occasionally enjoyed sewing or going to yard sales, regularly performed cooking, cleaning and laundry chores (although she found cleaning and laundry to be "painful" and "tir[ing]" due to physical symptoms), sold Tupperware and Avon products for a time, swam, dined and shopped with friends, and maintained good social and family relationships. (Dkt. #7-7 at 412, 611, 616, 622, 628, 655, Dkt. #7-13 at 1125). As such, the ALJ's finding that plaintiff's activities of daily living suggest a higher level of functioning than Dr. Deines described are not erroneous.

The Court also observes that the ALJ's mental RFC findings were supported by other substantial evidence of record. Such evidence included the opinion of consulting psychologist Dr.

8

Long, who examined plaintiff on May 9, 2012 and found that her social skills, thought processes, attention and concentration, memory skills, cognitive functioning, etc. were all normal. (Dkt. #7-7 at 410-13). The ALJ gave "great" weight to Dr. Long's opinion, and the limitations included by the ALJ in her RFC finding actually exceed those indicated by Dr. Long, to the extent that they attempt to account for moderate difficulties with social skills, cognitive processes, maintaining attention and concentration, working at a consistent pace, and handling work-related stress.

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate and sufficiently explained, and that the ALJ's finding that plaintiff's mental health limitations are not greater than moderate is supported by substantial evidence.

## II.     Plaintiff's Credibility

The Commissioner is not obligated to accept without question a claimant's testimony about her limitations and symptoms, but has discretion to evaluate the claimant's credibility in light of the evidence in the record. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

The plaintiff argues that in assessing her credibility,[2] the ALJ improperly took note of evidence that Dr. Deines believed that plaintiff might be abusing her psychiatric medications, and was "rebounding" between providers to obtain additional medications, or otherwise engaging in manipulative behaviors. (Dkt. #7-8 at 682; Dkt. #7-13 at 1530-31). Plaintiff also argues that the ALJ made improper, irrelevant comments in her decision, observing that some of plaintiff's treatment records indicated that plaintiff's anxiety and depression were compounded by her own "bad personal social choices," resulting in "emotional consequences and anxiety that she has

---

[2] While neither plaintiff nor the ALJ's decision purport to identify precisely what part of plaintiff's testimony the ALJ declined to credit, plaintiff testified at her supplemental hearing that she lives in fear, has trouble being around other people, suffers from multiple panic attacks every week, after which she has to take medication that puts her to sleep, and locks herself in her room at least four times per month, unable to come out due to anxiety symptoms. (Dkt. #7-8 at 674-75, 713).

9

created for herself." (Dkt. #7-8 at 682). In the same passage, the ALJ expressed concern over Dr. Deines's prescribing habits, noting that he readily prescribed plaintiff large amounts of psychiatric medications even while expressing concern that she was abusing them, and repeatedly increased plaintiff's dosages during periods when he was already aware that she was also taking multiple non-psychiatric medications, "but seldom mentioned the danger of taking too many medications or medications that are contraindicated." *Id.*

Initially, the Court observes that evidence of medication abuse (e.g., Dkt. #7-7 at 434, 436, 470, 533, 620, 649; #7-13 at 1080, 1530-31) was appropriately considered by the ALJ. *See Johnston v. Berryhill*, 2017 U.S. Dist. LEXIS 104983 at *31 (D. Conn. 2017) (evidence of claimant's drug-seeking behaviors was properly considered by the ALJ in determining that a claimant's testimony concerning his limitations was not credible). It was also appropriate for the ALJ to consider to what extent plaintiff was compliant with her own plan of care and medication regimen, so long as she also considered "any explanation . . . plaintiff may have [had] for the failure" (e.g., noncompliance with psychiatric medication regimen despite psychiatrist's warnings). *See Suttles v. Colvin*, 654 Fed. Appx. 44, 46 (2d Cir. 2016) (unpublished opinion). *See also Tucker v. Commissioner*, 2020 U.S. Dist LEXIS 54419 at *17-*18 (W.D.N.Y. 2020) (in evaluating a claimant's subjective complaints, the ALJ may reasonably consider the claimant's noncompliance with recommended treatment).

The Court likewise finds no factual error in the ALJ's observation that plaintiff's mental health symptoms were typically situational in nature – that is, they waxed and waned in direct relationship to events and decisions in plaintiff's personal life. Even assuming *arguendo* that the ALJ's comments concerning plaintiff's or Dr. Deines's decision-making exceeded the bounds of proper comment, such error was harmless in the context of the ALJ's decision. These observations

were made as part of the ALJ's summary of plaintiff's psychiatric treatment records with Dr. Deines, and appear to be mere dicta. (Dkt. #7-8 at 682). The ALJ's discussion of plaintiff's credibility appears in a separate portion of the ALJ's decision (Dkt. #7-8 at 680 et seq.), where her findings are well-supported by substantial evidence of record, including plaintiff's attempts to obtain additional medications, her self-reported activities of daily living, and the no-more-than-moderate limitations ascribed to plaintiff in the opinions of consulting psychologist Dr. Long and treating physician Dr. Jan Goosens. (Dkt. #7-8 at 670, 681-83). *See Suttles*, 654 Fed. Appx. 44 at 46-47 (ALJ's improper evaluation of credibility is harmless where other "substantial evidence supported the ALJ's overall credibility determination"); *Johnston*, 2017 U.S. Dist. LEXIS 104983 at *33 (same).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #9) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 15, 2020.